**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| MICHAEL A. FERRELL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 1:03-CV-27-TS |
| | ) | |
| MARK A. BIEKER, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

Plaintiff Michael Ferrell is seeking damages under 42 U.S.C. § 1983 from four police officers for their conduct in detaining him on January 21, 2002. The deadline for dispositive motions in this case was October 2, 2003. The Defendants filed a motion for summary judgment on October 1, 2003. The motion was dismissed on May 26, 2004, because the Court found that material issues of fact remained. (Mem. Decision & Order May 26, 2004; DE 57.) Nearly a year later, the Plaintiff filed a motion for summary judgment, which the Court dismissed as untimely. (Order December 17, 2004; DE 76.) The Defendants filed a cross motion for summary judgment on November 1, 2004, arguing that they have qualified immunity. That motion is also untimely. However, the Defendants correctly point out that they raised qualified immunity as a defense in their first motion for summary judgment and the Court failed to consider the argument.

In fairness to the Plaintiff and because the Defendants' motion was filed after the deadline for dispositive motions, the Defendants' November 1, 2004, motion for summary judgment is dismissed and the Court will not consider it. However, because the Court has not yet done so, the Court will consider the Defendants' qualified immunity argument as raised in its initial motion for

summary judgment, filed on October 1, 2003. Upon reconsideration of the previous Opinion, it also appears that the Court did not address whether the Defendants are entitled to summary judgment on the Plaintiff's false arrest claim. The Court will address that claim as well.

## A.      Standard for Summary Judgment

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). After adequate time for discovery, summary judgment must be given against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not

required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

## B.    Material Facts

The following facts are restated from the Court's May 26, 2004, Opinion. Resolving all genuine disputes and drawing all reasonable inferences in the Plaintiff's favor, the following facts are presumed true for the purposes of this Opinion.

On January 21, 2002, a passing motorist called the Fort Wayne Police Department to report a fight between at least two individuals in the parking lot of the Nap Town Riders Club at the corner of New Haven Avenue and Lumbard Street in Fort Wayne. The motorist reported that ten minutes had lapsed between driving past the nightclub and phoning the police. The motorist stated that he had observed a bottle being thrown in the fight.

Fort Wayne Police Officers Bieker, Chambers, Eaken, and Straub were dispatched to the parking lot. The officers knew the club had a reputation for attracting a rough crowd. Officer Bieker arrived at the Nap Town Riders Club at about 1:33 a.m. When he arrived, Officer Bieker did not see a fight in progress. He saw three cars, parked side by side, backed into parking spaces in the rear of

the parking lot with their engines running. Other than the Fort Wayne Police Officers, the occupants of the three cars were the only people present in the parking lot.

Officer Bieker parked his squad car about fifteen feet away from the front of the Plaintiff's car. The other Defendants arrived in two squad cars and pulled in the alley behind the three cars. Neither Officer Bieker nor the other Fort Wayne Police Officers had their squad car emergency lights on.

The Plaintiff, Michael Ferrell, was seated in a Pontiac Grand Prix, talking on his cell phone. Parked next to him was Damarcus Johnson. Parked next to Mr. Johnson were Christian Black and Terence Sanders in a white Suburban. The Plaintiff was talking on his cell phone and the occupants of the other cars were waiting for him to finish his phone call so they could go into the nightclub together.

One of the Defendants approached Damarcus Johnson's car. Without questioning him about the fight, the officer told Mr. Johnson to leave the premises. The officer told Mr. Johnson that Mr. Johnson did not want any part of what was going on in the lot.

As Mr. Johnson was pulling out of the lot, Officer Bieker approached the Plaintiff's car. As Defendant Bieker approached his car, the Plaintiff rolled his window down approximately two inches. Officer Bieker requested identification. The Plaintiff did not ask Officer Bieker any questions and handed him an Indiana Identification Card. Officer Bieker instructed the Plaintiff to remain in his car until he returned. The parties agree that the Plaintiff was not free to leave from this point on. (Def. Answers to Pl.'s Interrogs. 4; DE 27.) Officer Bieker went to his squad car to enter the Plaintiff's information in his computer so as to check for warrants and prior involvement with the Fort Wayne Police Department. By this time, two of the Defendants were searching the

Suburban.

As Officer Bieker entered the Plaintiff's information, the Plaintiff got out of his car and walked toward Officer Bieker's squad car. The Plaintiff stated that he was going into the nightclub to find his friend so that he could leave. Officer Bieker instructed the Plaintiff to return to his car. The Plaintiff complied.

The computer check indicated the Plaintiff had prior arrests for weapons charges. Defendant Bieker verified this information with the dispatcher and relayed it to the other Defendants. Officer Bieker concluded that, for his and the other Defendants' safety, he should search Mr. Ferrell and his car for weapons.

Officer Bieker approached the driver's side of the Plaintiff's car and asked the Plaintiff to step out of his car. The Plaintiff responded, "For what?" Officer Bieker advised the Plaintiff that because he had prior arrests for weapons charges, Officer Bieker wanted to check him and the car for police officers' safety. Officer Bieker told the Plaintiff that he could then be on his way. Officer Bieker explained that he wanted to search for weapons because of the Plaintiff's criminal history. The Plaintiff refused to exit the car. (Mark Bieker's Aff. 3; DE 36.)

Officer Bieker stuck a pointed object into the cracked window, possibly a baton. He told the Plaintiff that if he "did not get out of the f***ing car" he was "going to break the window and drag [the Plaintiff's] black a** out." (Plaintiff's Declaration ¶ 13; DE 42.) The Plaintiff insisted that he would not get out of the car until he spoke with the shift sergeant.

Defendant Bieker then shoved the object he was holding in the car window at the Plaintiff, striking him in the face under his left eye. The officer then removed the object from the window, and the Plaintiff rolled up his window. The Plaintiff did not report any injuries from this contact.

The Plaintiff informed Officer Bieker that he was calling 911 because he wanted to see a sergeant. Officer Bieker used his police radio to request a sergeant. Sergeant Ronald Lapp of the Fort Wayne Police Department advised that he would come to the Nap Town Riders Club. Defendant Bieker then called to the two officers searching the Suburban, "Come over here! The son of a bitch just called 911!" (Damareus Johnson's Aff. 2; DE 42.) The three officers surrounded the Plaintiff's car, cursing at the Plaintiff and pulling at the door handles. Officer Bieker shone his flashlight into the car to look for weapons.

Officer Bieker reports that he saw in plain view a clear plastic bag containing a green, leafy substance on the floor behind the passenger's seat. On the basis of his training and experience, Officer Bieker believed the green, leafy substance to be marijuana. Officer Bieker also observed a clear plastic bag containing several white, chalky rocks by the driver's seat. On the basis of his training and experience, Officer Bieker believed the white, chalky rocks to be crack cocaine.

The Plaintiff denies that there were any such plastic bags in plain view. The police did not take any photographs of plastic bags in the Plaintiff's car.

Three to five minutes after the 911 call, Fort Wayne Police Sergeant Lapp arrived at the scene. Seargent Lapp was eventually able to persuade the Plaintiff to exit his car. Officer Bieker placed the Plaintiff in handcuffs and led him to the front of Bieker's squad car, where the Plaintiff tried to explain to Sergeant Lapp what had happened.

By that time, the police had begun searching the Plaintiff's car. As they searched, they continued to taunt the Plaintiff. Officer Bieker removed some condoms from the car and told the Plaintiff, "You won't be using these for awhile!" (Plaintiff's Declaration ¶ 17; DE 42.)

The search uncovered the two plastic bags Officer Bieker states he had seen earlier. The

police performed field tests on the contents, confirming that one bag contained marijuana and the other contained cocaine.

The Plaintiff and Officer Bieker exchanged some words, and Bieker approached the Plaintiff. Officer Bieker then pushed the Plaintiff in the face with an open hand.

Officer Bieker arrested the Plaintiff for Possession of Cocaine, Possession of Marijuana, Resisting Law Enforcement, Disorderly Conduct, and Public Intoxication.

Officers Scott Straub, Sean Eaken, and John Chambers did not arrest him or touch him at any time.

Officer Bieker's patrol car was equipped with a video camera. However, this video camera was not on to record the investigation and arrest at the Nap Town Riders' Club.

All the charges that Officer Bieker made against the Plaintiff at the time of his arrest were dismissed within seventy two hours. Defendant Bieker never asked the Plaintiff whether he had been involved in or knew anything about a fight in the nightclub parking lot.

**C.      Standard for Qualified Immunity**

Government officials, including police officers, are protected by the doctrine of qualified immunity for actions that could have been reasonably believed to be lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The reasonableness of an officer's belief that his actions are legal depends on how clearly established the law is governing the officer's particular action. An officer's belief in the lawfulness of his conduct is reasonable unless pre-existing law makes the unlawfulness of the conduct apparent. *Id.* at 639–40. Even if an officer acts unlawfully, qualified immunity applies if the officer's mistake was reasonable. *Saucier v. Katz*,

533 U.S. 194, 205 (2001).

The Supreme Court has outlined a two step process to determine whether qualified immunity applies. *Id.* at 200. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the facts show a violation of a plaintiff's constitutional rights, the court must then ask whether the specific right violated was so clearly established at the time of the conduct that the officer's mistake was unreasonable. *Id.* at 201–202. It is the plaintiff's burden to show a defendant's conduct violated clearly established law, and he may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). If relying on caselaw, it is not necessary for a plaintiff to find a prior case with nearly identical facts; the plaintiff must produce caselaw showing the state of the law at the time of the officer's conduct was such that they had fair warning their conduct violated the constitution. *See Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005).

**D.      Whether Officer Bieker Has Qualified Immunity for Stopping the Plaintiff**

The only question regarding the Plaintiff's initial seizure is whether Officer Bieker is entitled to qualified immunity. This Court held in its May 26, 2004, order that a reasonable jury could find that Officer Bieker's stop of the Plaintiff violated his rights. The Court must now look to whether Officer Bieker's actions, as alleged by the Plaintiff, were reasonable.

"Two categories of seizure implicate the Fourth Amendment: an investigative stop and an arrest." *United States v. Mancillas*, 183 F.3d 682, 695 (7th Cir. 1999). Investigative stops, or "Terry

9

stops," are allowed by the Fourth Amendment when "specific and articulable facts" support a reasonable suspicion the individual has engaged or is about to engage in criminal activity. *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In determining whether reasonable suspicion exists, a court looks to the totality of the circumstances bearing in mind that "[t]he process does not deal with hard certainties, but with probabilities." *Id.* at 696 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "The real issue 'is whether the police conduct—given their suspicions and the surrounding circumstances—was reasonable.'" *Id.* (quoting *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994)).

The Defendant Police Officers arrived at the Nap Town Riders' parking lot knowing that an anonymous passerby had stated that a fight had occurred there more than ten minutes ago and a bottle was thrown. Also, they knew the club had a reputation for attracting a tough crowd. In the parking lot, they saw three cars with their engines running that had backed into the parking spaces. The Defendants say that they saw a broken bottle near the Plaintiff's car, but the Plaintiff disputes these statements and points to the fact that the police report does not mention broken glass. (Plaintiff's Declaration ¶ 19; DE 42.) Officer Bieker approached the Plaintiff's car and requested identification from the Plaintiff, who was talking on his cell phone. The Plaintiff complied. Officer Bieker states that the Plaintiff was not free to leave from this point on. The Plaintiff then attempted to leave his vehicle to enter the club. He was ordered to remain in his car, which he did until a police sergeant arrived.

Officer Bieker is not entitled to qualified immunity if it was clearly established at the time of the incident that reasonable suspicion does not exist to detain a person temporarily where an officer receives an anonymous phone call stating a fight has taken place at a location that has a

10

reputation for attracting a rough crowd and where three individuals are sitting in their cars at that location. The Plaintiff argues that clearly established law would have led a reasonable officer in Officer Bieker's position to conclude that he lacked reasonable suspicion to detain the Plaintiff. The Plaintiff cites *Florida v. J.L.*, 529 U.S. 266 (2000), in support of his argument.

In *J.L.*, the police received an anonymous tip that a young black male in a plaid shirt at a particular bus stop was carrying a gun. The police arrived at the stop and found a young black man in a plaid shirt. Without any evidence corroborating the tipster's claim that the young man had a gun, the police searched the man and found a gun. *Id.* at 268–69. The Supreme Court held that the "bare report of an unknown, unaccountable informant who neither explained how he knew about the [criminal activity] nor supplied any basis for believing he had inside information about [the suspect]" does not give a police officer reasonable suspicion to stop and search a suspect. *Id.* at 271. The anonymous tip must be reliable in its assertion of illegality; an anonymous tip that is corroborated as to facts that do not suggest criminal activity in themselves does not give rise to reasonable suspicion of criminal activity. *Id.* at 272.

*J.L.* clearly established that an anonymous call reporting that crime is occurring at a particular location, uncorroborated as to facts suggesting criminal activity, does not give police officers reasonable suspicion to stop individuals at that location. A reasonable officer would be aware of this requirement after *J.L.* There is no fact not in dispute besides the anonymous tip that would give the police officers any reason to suspect that a crime took place at that location. Furthermore, this is an even easier case than *J.L.*, as here, the tip itself does not describe the Plaintiff or suggest the Plaintiff engaged in criminal activity. Under the facts alleged by the Plaintiff, qualified immunity does not apply.

11

**E.      Whether Summary Judgment Is Warranted on Plaintiff's Claims for False Arrest**

The Court did not previously consider whether the Defendants are entitled to summary judgment on the Plaintiff's false arrest claim, and it will consider the issue now. "It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan*, 957 F.2d 345, 349 n. 1 (7th Cir.1992). "An officer has probable cause to arrest when the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient that a prudent person would believe that the suspect committed or was committing an offense." *Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 770 (7th Cir. 2002). Probable cause is evaluated from the perspective of a reasonable person in the position of the arresting officer. *Id.* Also, a suspect is under custodial arrest only when "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003).

**1.      Whether the Plaintiff's Arrest Was in Violation of His Fourth Amendment Rights**

The Defendants assert four grounds justifying the Plaintiff's arrest: first, Officer Bieker observed crack and marijuana in the Plaintiff's car; second, a search of the Plaintiff's car produced crack and marijuana; third, the Plaintiff refused to exit his car as ordered; and fourth, the Plaintiff smelled of alcohol, had bloodshot eyes, swore at the officers, and yelled loudly.

As a preliminary consideration, the Court will consider the Plaintiff's argument that probable cause cannot exist because the officers' initial violation of the Fourth Amendment tainted the

discovery of the drugs in his car, preventing reliance on the drugs in considering whether probable cause existed. The Defendants do not respond to this argument, but the weight of authority found by the Court holds that the "fruit of the poison tree" doctrine, which requires the exclusion of evidence found as a result of a violation of the Fourth Amendment in a criminal trial, does not apply in a § 1983 action. *See Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) ("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); *Padilla v. Miller*, 143 F. Supp. 2d 479 (M.D. Pa. 2001) ("[T]he courts that have addressed the issue have uniformly concluded that the exclusionary rule is not applicable in a § 1983 action.") (collecting cases); *Reich v. Minnicus*, 886 F. Supp. 674 (S.D. Ind. 1993).

There are several reasons for this rule. The Supreme Court has stated that the determination of what damages are available for § 1983 claims is to be guided in part by examining common law tort rules "defining the elements of damages and the prerequisites of recovery . . . ." *Heck v. Humphrey*, 512 U.S. 477, 483 (1994). In considering the common law rules applicable to a § 1983 claim for damages resulting from an illegal search and subsequent arrest and prosecution, the Third Circuit in *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000), found that, traditionally, a civil plaintiff subjected to an illegal search could collect damages arising only from the search, and could not collect damages for prosecution, conviction, or incarceration resulting from the search. *Id.* (citing Akhil Reed Amar, *The Constitution and Criminal Procedure* 20–25 (1997)). The rule makes sense, as "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all," *Hector*, 235 F.3d at 157 (quoting *Townes*, 176 F.3d at 148), and it would be odd if "the law breaker whose Fourth Amendment rights are violated recovers more than an innocent victim of the same unlawful search and seizure." *Padilla*, 143 F. Supp. at 492. Another

consideration is that the "fruit of the poisonous tree" doctrine is not constitutionally required; it is a "judicially created remedy designed to safeguard Fourth Amendment rights." *United States v. Leon*, 468 U.S. 897, 906 (1984). The deterrence achieved by applying the exclusionary rule to criminal cases and by allowing civil liability for Fourth Amendment violations is sufficient, and any additional deterrence to be gained by applying the rule to civil cases is outweighed by the societal cost of excluding the evidence. *See Jonas v. City of Atlanta*, 647 F.2d 580, 588 (5th Cir. 1981). Thus, the determination of whether the Defendants had probable cause to arrest the Plaintiff can take account of evidence that may have been found as a result of a constitutional violation.

After the Plaintiff refused to exit his car, Officer Bieker shined a flashlight into the car to see if any weapons were visible. Officer Bieker states that he saw a bag appearing to contain marijuana behind the passenger's seat and a bag appearing to contain crack by the driver's seat, and that his observation of drugs in the Plaintiff's car gave him probable cause to arrest the Defendant. The Plaintiff states: "Not at any time when I rode in the vehicle . . . did I see any plastic bags lying beside the front drivers seat or behind the front passenger seat in plain view." (Plaintiff's Declaration ¶ 20; DE 42.) Taking all inferences in favor of the Plaintiff, because the Plaintiff and Officer Bieker disagree as to whether the drugs were in plain view, this is a material issue of fact for the jury.

It is undisputed that the search of the Plaintiff's car after he exited it resulted in the discovery of crack and marijuana. If this discovery was before the Plaintiff's arrest, the officers would have had probable cause to arrest the Plaintiff. However, it is unclear from the facts when the officers arrested the Plaintiff. Neither party specifically addresses the issue of when the Plaintiff was arrested. Officer Bieker states that the Plaintiff was not arrested until the drugs were removed from the Plaintiff's car and field tested. (Pl. Ex. 1, Officer Mark Bieker's Aff. ¶ 21; DE 36.) The Plaintiff

14

states that he was searched, handcuffed, and led away from his car as soon as he exited the vehicle. (Pl. Decl.  ¶16; DE 42.) The Court cannot determine when the arrest occurred on these disputed, undeveloped facts, and must leave the issue for a jury to decide.

The Defendants argue that they had probable cause to arrest the Plaintiff because he smelled of alcohol, had a .084% blood alcohol count, had bloodshot eyes, yelled loudly, and swore at the officers. However, Officer Bieker did not notice the Plaintiff's bloodshot eyes and smell of alcohol until he exited the car and was handcuffed. (Pl. Ex. 7, Officer Bieker's Narrative, January 21, 2002; DE 42.) Also, the Plaintiff's loud yelling and swearing occurred after he exited the car and was handcuffed. Again, because there is a material fact as to when the Plaintiff was arrested, the Court cannot rely on these facts at this stage to find probable cause.

The Defendants argue that the Plaintiff's refusal to cooperate with the police was a reason for his arrest. They have offered little argument on this point, however. The Court notes that Ind. Code § 35-44-3-3 makes it a crime to forcibly resist, obstruct, or interfere with a law enforcement officer lawfully executing his duties. That is, the  resistance, obstruction, and interference must be with force. *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993) ("'Forcibly' is a word descriptive of the type of resistance, obstruction, or interference, proscribed by law. Resistance, obstruction, or interference, with force is the action the statute addresses.").

In *Spangler*, the Indiana Supreme Court held that force was lacking when an individual refused to accept service of process from a deputy sheriff and walked away from him. He was arrested and charged with resisting law enforcement under Ind. Code § 35-44-3-3. The Indiana Supreme Court held that because "[t]here was no strength, power, or violence directed towards the law enforcement official" and "no movement or threatening gesture made in the direction of the

15

official," the defendant had not resisted with force. *Spangler*, 607 N.E.2d at 724.

Later cases from Indiana courts of appeals have strictly applied *Spangler's* definition of force. In *Atkinson v. State*, 810 N.E.2d 1190  (Ind. Ct. App. 2004), an Indiana court of appeals overturned a guilty verdict for resisting arrest when the evidence showed that the defendant's only resistance was "running into the woods and secreting himself in the trunk of a vehicle." *Id.* at 1193. The court in *Ajabu v. State*, 704 N.E.2d 494 (Ind. Ct. App. 1998), held a protestor who was ordered not to burn a flag did not forcibly resist a police officer when the protestor refused to let go of the flag and twisted away from an officer who had grabbed onto the flag. *Id.* at 495–96.

Other cases have taken the view that *Spangler* did not define "force" so narrowly. The court in *Guthrie* held that a defendant who refused to leave a jail wagon, and stiffened his legs and leaned back when officers physically removed him, had forcibly resisted under the statute. *Guthrie*, 720 N.E.2d 7, 9 (Ind. Ct. App. 1999). In *Johnson v. State*, 833 N.E.2d 516 (Ind. Ct. App. 2005), a court again found that a man who refused to comply with police orders and stiffened up when police attempted to move him into the transport vehicle was guilty of resisting the duties of an officer. The court noted that it was not strictly applying the language used in *Spangler*: "We recognize that our decision, and even that in *Guthrie* upon which we have relied, may have moderated the definition of 'forcibly resist' as it was written in *Spangler*." *Id.* at 519.

The Seventh Circuit considered *Spangler* in *Potts v. City of Lafayette*, 121 F.3d 1106 (7th Cir. 1997). Potts attempted to bring a tape recorder to a Ku Klux Klan rally in violation of a police order prohibiting people from bringing to the rally items that could be used as weapons. Potts was told of the rule, but he indicated that the officers would have to arrest him and he stepped toward the entrance of the rally. *Id.* at 1113. The court held that "Potts' step toward the entrance of the rally,

16

in response to the officers' lawful orders to stay out of the rally if he did not relinquish his tape recorder, constitutes 'force' as that term is understood in the context of interfering with officers' duties." *Id.* The court went on to state that "An officer has a right to enforce a lawful order even if that means arresting a person who verbally refuses to obey the order and then makes a movement in furtherance of his goal of disobedience" and that "[t]he idea that an officer has to wait until he is belted across the mouth before effecting an arrest is too absurd to discuss." *Id.*

*Potts* found that probable cause existed to arrest an individual who indicated his intent to violate an officer's order and moved with the purpose of resisting that order. *Compare Blair v. City of Evansville*, 361 F.Supp.2d 846, 861 (S.D. Ind. 2005) (distinguishing *Potts*, and finding no probable cause where individual indicated resistance to police order, but made no movement in resistance to the police order). This is in line with *Spangler's* statement that a "movement or threatening gesture made in the direction of the official" constitutes forceful resistance.

Here, the Plaintiff indicated his refusal to exit his car as ordered and locked his doors and rolled up his window. Under the Plaintiff's own account of what happened, he actively moved with the purpose of resisting the officer's order by locking the doors and rolling up his windows. Thus, under the totality of the circumstances, the officers had probable cause to arrest the Plaintiff for forcibly resisting a law enforcement officer.

This is a close case, but even if the officers lacked probable cause to arrest the Plaintiff, they are entitled to qualified immunity for the arrest. A police officer enforcing the statute would have difficulty determining whether the totality of the circumstances gave him probable cause. The law following *Spangler* has only become less clear, as some courts have strictly applied *Spangler's* narrow definition of force while others have taken a broader view of what constitutes force under

17

*Spangler*. The Plaintiff has not offered any cases sufficiently similar to this situation to show the officers should have known they lacked probable cause. The law is not so clear that a reasonable officer would know he lacked probable cause to arrest an individual when dealing with the situation presented here. Therefore, even if the officers did lack probable cause, qualified immunity applies. Summary judgment must be granted on the Plaintiff's false arrest claim.

**F.      Whether Officer Bieker Has Qualified Immunity against Plaintiff's Excessive Force Claims**

This Court held in its May 26, 2004, order that a reasonable jury could find that Officer Bieker used excessive force. Thus, the only question regarding the Plaintiff's excessive force claim is whether Officer Bieker is entitled to qualified immunity for using excessive force in stopping and arresting the Plaintiff.

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). Judging from the perspective of a reasonable officer present on the scene, if an officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them," the actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting

18

to evade arrest by flight." *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003). Also, injury is not required to set out a claim for excessive force, but the lack of injury tends to suggest that there was not excessive force. *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 471 n.3 (7th Cir. 1997).

The Plaintiff has alleged two instances of excessive force. First, the Plaintiff states that he was sitting in his car, refusing to exit because he believed he had done nothing wrong, when Officer Bieker thrust his baton through the cracked window, striking the Plaintiff in the face. Second, the Plaintiff states that after he exited the car and was handcuffed, he responded to a taunts by Officer Bieker regarding condoms found in the Plaintiff's car. Officer Bieker then approached the Plaintiff and shoved the Plaintiff's head with an open hand, causing the Plaintiff to stumble. Both incidents appeared to him to be intentional. Neither incident caused the Plaintiff injury, though he says it hurt when he was poked in the face with the baton.

The crime the officers were investigating was a fight in a bar parking lot, so extra caution in dealing with suspects would be reasonable. However, if the Plaintiff's account is found to be credible, they had no reason to suspect the Plaintiff, as he did not physically resist, attempt escape, or do anything to cause the officers to fear for their safety. In the second instance he was handcuffed. According to the Plaintiff's account, Officer Bieker's poke and shove were wholly gratuitous.

It is clearly established that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). A wholly gratuitous shove or poke by a police officer serves no government interest and unnecessarily intrudes on a person's Fourth Amendment interests, even when the individual is not injured. According to the Plaintiff's account, there was no provocation other than a verbal response to Officer Bieker's taunts, and there was no reason to think the Plaintiff was going to

physically respond at any point. Also, the type of force alleged by the Plaintiff does not appear to have had the purpose of subduing the Plaintiff or protecting the officers' safety. If a jury finds the Plaintiff's account of the events credible, it would have been obvious to a reasonable officer that gratuitously poking the Plaintiff in the head and shoving him in the face served no government purpose and such force would be excessive. Officer Bieker is not entitled to qualified immunity at this stage of proceedings.

**G.     Whether Chambers, Eaken, and Straube Have Qualified Immunity against Plaintiff's Claims for Failure to Intervene**

This Court held in its May 26, 2004, Order that a reasonable jury could find that Officers Chambers, Eaken and Straube failed to intervene to prevent the infringement of the Plaintiff's constitutional rights. The only question here is whether the officers are entitled to qualified immunity.

An officer who fails to prevent other law enforcement officers from violating the constitutional rights of citizens can be held liable under § 1983 if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001).

First, there is an issue as to whether Officer Bieker actually violated any of the Plaintiff's rights, requiring the intervention of officers Chambers, Eaken, and Straube. Second, there is a material issue as to whether the officers were present and had knowledge of the alleged violations or whether had a realistic opportunity to prevent such violations if they did occur. The Plaintiff

20

argues that the officers were present when the Plaintiff was stopped, arrested, and shoved. Also, there is no indication that the officers questioned the legality of the investigatory stop or Officer Bieker's poke and shove of the Plaintiff, or made any attempt to prevent these alleged violations.

It was clearly established at the time of the incident that an officer violates an individual's constitutional rights by failing to prevent another officer's violation of those rights when he has a realistic opportunity to do so. It stands to reason that if the other officers were present and observing Officer Bieker's actions, the qualified immunity analysis applicable to Officer Bieker applies equally to them. That is, if a reasonable officer in Officer Bieker's position should have been aware of clearly established law making the investigatory stop and force used against the Plaintiff unlawful, an officer observing Officer Bieker's interaction with the Plaintiff should also have been aware of that same clearly established law. Knowing that he had a duty to intervene to prevent violations of constitutional rights if possible, a reasonable officer would have done so. Because there is an issue of fact as to whether intervention was necessary or possible, qualified immunity does not apply to Officers Chambers, Eaken, and Straube at this stage of proceedings.

### H.    Conclusion

The purpose of summary judgment is whether there is sufficient evidence for a case to be presented to a jury. The Court does not examine the credibility of the witnesses or the weight of the evidence, and must construe all facts and take all reasonable inferences to favor the nonmoving party. In this case, there are two very different versions of what happened on January 21, 2002, and it will be the jury's task to determine which version is closer to the truth.

**ORDER**

The Defendants' cross motion for summary judgment [DE 68] is DISMISSED because it was filed after the deadline for dispositive motions. Upon reconsideration of the Defendants' arguments for qualified immunity raised in its October 1, 2003, motion for summary judgment [DE 36], the Court GRANTS in part and DENIES in part the Defendants motion for qualified immunity. Qualified immunity exists only for the Plaintiff's false arrest claim, which is DISMISSED.

SO ORDERED on February 3, 2006.

/s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA